## FORNI v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. January 5, 1925. Rehearing Denied February 2, 1925.)

No. 4355.

1. **Intoxicating liquors** ⊕⟊248—Affidavit for search warrant held sufficient.

An affidavit *held* sufficient as basis for issuance of a search warrant to search for intoxicating liquors.

2. **Intoxicating liquors** ⊕⟊236(7)—Evidence held to sustain finding that liquor was kept for purpose of sale.

Evidence *held* to support a finding that the basement of defendant's dwelling in which he resided was used for business purposes and was lawfully searched under a search warrant

and possession of liquor found and seized therein *held* prima facie evidence that it was kept for the purpose of sale under National Prohibition Act, tit. 2, § 33 (Comp. St. Ann. Supp. 1923, § 10138½t).

**3. Criminal law ⬤⟝1169(11)—Admission of evidence of defendant's previous arrest held not prejudicial under the issues.**

Where defendant admitted the ownership and possession of liquor seized on his premises and the only issue was as to whether it was kept for illegal purposes, and the prima facie case made under National Prohibition Act, tit. 2, § 33 (Comp. St. Ann. Supp. 1923, § 10138½t), by its possession was not met, the admission of evidence of previous arrests of defendant, if erroneous, was not prejudicial.

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; John S. Partridge, Judge.

Criminal prosecution by the United States against Charles Forni. Judgment of conviction, and defendant brings error. Affirmed.

H. S. Young, R. G. Hudson, Frank T. O'Neill, Preston & Duncan, and B. F. Rabinowitz, all of San Francisco, Cal., for plaintiff in error.

Sterling Carr, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Writ of error in behalf of Forni, who was convicted under two counts of an information, one charging that he maintained a common nuisance by keeping for sale certain intoxicating liquor, and the other that he unlawfully possessed certain intoxicating liquor.

[1] The assignments present the question of the legality of the issuance of the search warrant and the right to use evidence obtained in making search under the warrant.

In the affidavit upon which search warrant was issued, one Rinckel deposed that he had reason to believe, and did believe, that within a certain described house, store, building, or other place in the Northern district of California, to wit, "a certain basement garage at 2933 Webster street, San Francisco, Cal., and an outhouse or shed in the same lot in the rear, being the premises of parties unknown, there is located certain property, to wit, illicit liquors, which is being used as the means of committing a felony, to wit, a violation of the National Prohibition Act of the statutes of the United

States (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.); that the facts tending to establish the grounds of this application and the probable cause of deponent believing that such facts exist are as follows: That this affiant on the 26th day of December, 1922, visited said premises and saw quantities of liquor without evidence of tax being paid; that affiant has been informed that liquors are taken to and from said garage both night and day; that affiant has reason to believe from said information and from inspection of the said garage that liquors in excess of one-half per cent. alcohol, illegally acquired, are stored and traded in from this garage." Eliminating those portions of the affidavit in which affiant states that he had been informed that liquors are taken to and from the garage, there still remains the positive and distinct averment that affiant visited the premises described; that he saw quantities of liquor in the premises without evidence of tax being paid; and that from his inspection of the garage he averred that liquors in excess of one-half per cent. alcohol, illegally acquired, were stored and traded in. We think the facts averred were sufficient to show probable cause. They furnished ground of suspicion sufficiently strong to warrant the belief that the person or persons accused were guilty of the offenses charged.

[2] There was nothing in the affidavit upon which warrant issued tending to show that the premises were a private dwelling. However, by petition for return of the seized liquor and wine, the question whether or not the premises were the private dwelling of Forni or others became a controverted issue, upon which testimony was taken and reduced to writing. The court denied the petitioner's prayer. Afterwards, before trial, defendant moved for an order to prevent the government from introducing in evidence the liquors that had been taken from the garage under the warrant. The motion was denied. In the affidavit of Forni, filed in support of his motions, he averred that he owned and was entitled to possession of the seized liquors, wines, and brandy, described in part as 25 cases Scotch whisky; 5 50-gallon barrels whisky, 1 50-gallon barrel whisky containing about 4 gallons, 1 50-gallon barrel, partly filled, of sherry, 18 50-gallon barrels red wine; 2 175-gallon puncheons of wine, 1 10-gallon barrel alcohol, 2 50-gallon barrels of brandy, 11 5-gallon jugs of wine, 93 quart bottles of red wine, 15 empty barrels, 1 hydrometer, and a glass

tube; that the prohibition agents entered the premises which constituted his private dwelling house where he actually resided; that the premises consisted of a two-story frame building, and basement, outhouse, and shed directly in the rear of the building; that the building and shed are within a common inclosure; that the basement and shed from time to time, and particularly on December 26, 1922, were used by affiant and his brother for the purpose of "storing, in addition to said property seized as aforesaid, other personal effects, such as furniture, clothing, pictures, and the automobile of affiant"; and that the prohibition agents gained access to the shed by scaling the wall. The answering affidavit by the prohibition agent Rinckel stated that the building involved had underneath it a garage disconnected from any portion of the building, in that there is no ingress nor egress therefrom to any other portion of the building, the main entrance to the garage being from Webster street; that before the 26th of December, 1922, he and other prohibition agents had information that intoxicating liquor was being stored underneath the building referred to, and that pursuant to such information he with another agent went went to the premises, and, "looking through an open door, saw in plain sight in said garage about 25 cases of intoxicating liquor, to wit, Scotch whisky, each case marked D. T. Company, Vancouver, B. C."; that the liquor was untax paid, and contained no internal revenue stamps whatever; that in the rear of the premises in a shed affiant saw through an open door a large number of barrels of whisky and wine (all particularly described in the affidavit) and a hydrometer and glass tube; that thereafter he obtained a search warrant, entered the garage, and seized 25 cases of intoxicating liquor from the garage, and also seized the liquor in the shed; that all the barrels, some full and some empty, were marked Vancouver, B. C. Affiant denied that there had been any entry by the prohibition agents into the dwelling of the defendant, and stated that, when the search and seizure under the warrant were made, one of the defendants, Blake, was arrested; that Blake said he owned the liquor so seized; that, about half an hour after the arrest of Blake, Forni came to the place, and, upon being arrested, stated to the agent that he was the owner of the liquor seized. Upon the trial of Forni much of the evidence of the search and property found was in substantial accord with what had been incorporated in the affidavit of the

agent. It also appeared that Forni stated to the agent that he had purchased the Scotch whisky from a boat lying outside. Defendant's evidence was to the effect that Forni lived in the premises. Forni did not testify.

[3] Under the facts we think the only reasonable inference was that the garage was used for a business purpose, the storage of a large quantity of contraband liquor. The possession of cases of liquor which bore no evidence of having been through the Customs House or stamped was prima facie evidence that the liquor was being kept for purposes of sale. Section 33, title 2, National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½t). And in this instance there is the uncontradicted statement that Forni said he bought the liquor "over the rail."

It is argued that the court erred in excluding testimony of the witness Forni, a brother of defendant, that the premises were the home of himself and the defendant. But all the facts as to the residence were before the court. It is true that Forni lived in the house above the garage and that the house was his home, but that does not affect the case, for the search warrant was valid, and the evidence showed that the garage under the house was used for the storage of a large quantity of intoxicating liquor that had been illegally acquired, and the presumption is that it was being kept for sale or other disposition in violation of law.

In the course of direct examination a prohibition agent testified that he had known the defendant, and that he had arrested him several times. No objection was made to the statement about arrest, nor was any motion made to strike it out. Witness was then asked by the prosecuting attorney, "About how many times?" This last question was objected to on the grounds that it was incompetent, irrelevant and immaterial. The court, without attempting to draw the well-defined distinction between evidence of mere arrest upon a charge and a judgment of conviction, overruled the objection, saying that, where the charge is maintenance of a nuisance involving the keeping for sale of intoxicating liquor, "previous *offenses* are admissible." (Italics ours.) Witness answered that he had arrested Forni four or five times. Defendant excepted. Apparently counsel for defendant had in mind an objection to the witness giving any detailed statement of the charges and of the number of times defendant had been arrested, but

did not intend to make the distinction we have referred to. While the better rule is that evidence of mere arrest for an alleged offense is incompetent, a prior conviction of maintaining a nuisance is relevant as connected with the charge as part of a continuing offense. Hazelton v. United States (C. C. A.) 293 F. 384. If defendant's counsel had drawn the court's attention to the distinction between conviction of misconduct and the mere charge of misconduct, doubtless the court would have ruled in recognition of it. But in this instance we fail to see that any possible prejudice could have resulted to the rights of the defendant, for the possession of the liquor and the storage of it was admitted. Defendant claimed to be the owner with right of possession, and thus the case narrowed to the single main issue of fact, whether defendant held possession for trade or business purposes. Upon this point the statute cited (section 33, title 2) makes possession prima facie evidence that the liquor was kept to be sold or otherwise disposed of in violation of the Prohibition Law. No attempt was made to meet this prima facie evidence, and the fact that Forni had been arrested before had so slight relation to the undisputed facts that it could not have affected the finding of the jury upon the undisputed evidence.

We find no error, and affirm the judgment.

ROSS, Circuit Judge (dissenting). I regret not to be able to agree to the judgment here given in this case.

The testimony of the defendant's witness Enrico Besozzi undoubtedly tended to show that the premises where the liquors in question were kept and found constituted the home of Forni. If so, I do not know of any law that requires its owner to make his liquors therein bear evidence of the tax thereon having been paid, much less any law that holds such owner responsible for the failure of such officer to see such evidence.

The statement contained in the affidavit of the prohibition officer upon which the search warrant was based that from his inspection he had reason to believe that liquors in excess of one-half of 1 per cent. alcohol illegally acquired are stored and traded in from the garage is, it seems to me, simply a statement as to what he believes; besides which that inspection, according to his own evidence, was (if it be true that the garage was part of Forni's home, as some of the evidence given on behalf of the defendant clearly tended to show) obtained by violating the sanctity of that home, contrary to the provisions of the Fourth Amendment of the Constitution, for the prohibition agent Rinckel expressly testified that he and two other prohibition agents first observed from another lot the liquor in the back shed and "climbed into the yard and saw into the basement and saw the liquor piled up there, and went to the United States commissioner and got a search warrant and went back and seized the liquor." He had, in my opinion, no more right to "climb" over the inclosure of a residence than he would have had to break open its front door, and any evidence so obtained would, if the premises constituted the home of Forni, be clearly inadmissible.

The record shows that the court refused to give either of the two following instructions requested by the defendant, to which action of the court exceptions were reserved:

"(1) If the premises in question were used and occupied by the defendant as a private dwelling, to justify a verdict of guilty you must find from the evidence either that it was being used for the unlawful sale of intoxicating liquor or that it was used in part for some business purpose."

"(2) The term 'private dwelling' includes the entire frame building in which the dweller resides as well as all buildings and outhouses situated within the common inclosure, provided that the same are used solely for the comfort and convenience of the dweller, and are not used for any business."

As has been above stated, the testimony of the witness Besozzi clearly tended to show that the premises where the liquors were kept and found constituted Forni's home. Whether it was or not, and whether or not they were so kept for sale, were questions of fact for the exclusive determination of the jury. The mere fact that the quantity was large and suspiciously packed would not of itself make their possession illegal, for there is no provision of the National Prohibition Act to my knowledge (and certainly none has been called to our attention) which places any limitation as to the quantity that the owners of homes are authorized by that act to keep, possess, and consume.